IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:22-CV-168-BO

| | |
|---|---|
| VICTOR A. MALAFRONTE,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant. | PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION |

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................... ii

INTRODUCTION ................................................................................................................... 1

NATURE OF THE CASE ....................................................................................................... 1

STATEMENT OF FACTS ...................................................................................................... 1

ARGUMENT ........................................................................................................................... 4

    I.    The Government's Position Conflicts with the Plain Text of the CLJA ........................ 4

    II.    The Statute-of-Limitations Provision of the CLJA Militates Strongly Against the
          Government's Interpretation ........................................................................................ 9

    III.   To the Extent That the Statute Is Ambiguous, the Canon in Favor of Members of
          the Armed Forces Refutes the Government's Interpretation ........................................ 9

    IV.   A Re-Exhaustion Requirement Would Undermine the CLJA's Purpose of Compensating
          Long-Suffering Victims of the Government's Mismanagement of Camp Lejeune ....... 10

CONCLUSION ...................................................................................................................... 13

Page(s)

**Cases**

*Ahmed v. United States*,
    30 F.3d 514 (4th Cir. 1994) .................................................................................................. 6, 11

*Brown v. United States*,
    838 F.2d 1157 (11th Cir. 1988) (per curiam) ............................................................................ 5

*Burchfield v. United States*,
    168 F.3d 1252 (11th Cir. 1999)) ................................................................................................ 5

*In re Camp Lejeune N.C. Water Contamination Litig.*,
    263 F. Supp. 3d 1318 (N.D. Ga. 2016) ...................................................................................... 2

*In re Camp Lejeune, North Carolina Water Contamination Litig.*,
    774 F. App'x 564 (11th Cir. 2019) ............................................................................................. 2

*Dolan v. U.S. Postal Serv.*,
    546 U.S. 481 (2006) ................................................................................................................. 10

*Dukert v. United States*,
    Civil No. 14-506, 2016 WL 10721258 (D.N.M. Jan. 5, 2016) ................................................. 7

*Glade ex rel. Lundskow v. United States*,
    692 F.3d 718 (7th Cir. 2012) ..................................................................................................... 6

*Gros v. United States*,
    232 F. App'x 417 (5th Cir. 2007) ............................................................................................ 12

*Henderson v. Shinseki*,
    562 U.S. 428 (2011) ................................................................................................................... 9

*Khan v. United States*,
    808 F.3d 1169 (7th Cir. 2015) ................................................................................................ 5, 6

*McNeil v. United States*,
    508 U.S. 106 (1993) ............................................................................................................. 7, 10

*Rudisill v. United States*,
    No. 5:13-CV-110-F, 2014 WL 4352114 (E.D.N.C. Sept. 2, 2014) ........................................... 6

*Trentadue ex rel. Aguilar v. United States*,
    397 F.3d 840 (10th Cir. 2005) ................................................................................................... 6

*United States v. Mead Corp.*,
    533 U.S. 218 (2001) ................................................................................................................. 12

*Washington v. Dep't of the Navy*,
  446 F. Supp. 3d 20 (E.D.N.C. 2020) (Boyle, C.J.) .................................................................. 6

*Wilson v. United States*,
  Civ. A. No. 92-2212-JWL, 1992 WL 370618 (D. Kan. Nov. 25, 1992) ................................. 7

**Statutes and Regulation**

28 C.F.R. § 14.2 .................................................................................................................................. 6

28 U.S.C. § 2675 ......................................................................................................................... 1, 3, 8

28 U.S.C. § 2675(a) ......................................................................................................................... 2, 5

30 U.S.C. § 932(a) ............................................................................................................................... 8

33 U.S.C. § 921(c) ............................................................................................................................... 8

Camp Lejeune Justice Act (CLJA), Honoring our PACT Act of 2022,
Pub. L. No. 117-168, § 804, 136 Stat. 1802: ................................................................................. 1, 2

    CLJA § 804(a) ............................................................................................................................ 5

    CLJA § 804(b) ........................................................................................................................ 2, 5

    CLJA § 804(c)(1) ........................................................................................................................ 5

    CLJA § 804(c)(2)(B) .................................................................................................................. 3

    CLJA § 804(d) ............................................................................................................................ 5

    CLJA § 804(f) ............................................................................................................................. 5

    CLJA § 804(g) ............................................................................................................................ 5

    CLJA § 804(h) ........................................................................................................................ 3, 4

    CLJA § 804(j) ............................................................................................................................. 5

    CLJA § 804(j)(1) ..................................................................................................................... 3, 5

    CLJA § 804(j)(2) .................................................................................................................. 3, 5, 9

Federal Tort Claims Act, 28 U.S.C. §§ 2671 *et seq* ....................................................................... 1

Patient Protection and Affordable Care Act, Pub. L. No. 111-148, 124 Stat. 119 (2010) ........... 8

**Legislative Report**

S. Rep. No. 1327, 89th Cong., 2d Sess. (1966) ............................................................................. 12

# INTRODUCTION

Plaintiff submits this memorandum of law in opposition to the government's motion to dismiss for lack of subject matter jurisdiction. ECF No. 16 (Nov. 14, 2022). The government argues that victims of the water contamination at Camp Lejeune who exhausted their administrative claims years ago are required to exhaust the same claims a second time. *See* Memorandum in Support of Motion to Dismiss, ECF No. 17 (Nov. 14, 2022) ("MTD"). But that position misreads the plain text of the Camp Lejeune Justice Act ("CLJA"), ignores decades of precedent construing 28 U.S.C. § 2675, and would frustrate Congress's core purpose in enacting the statute: to provide immediate relief to long-suffering victims of the government's failure to provide safe water at Camp Lejeune, many of whom have been diagnosed with terminal illnesses. Simply put, the CLJA requires nothing more than the filing of a claim with the United States Navy setting forth the facts that led to a plaintiff's injury and a demand for a sum of money. Plaintiff has undisputedly complied with that prerequisite to suit, and not a word of the CLJA suggests he must file the same claim again. This Court should accordingly hold that Plaintiff need not re-exhaust his claim.

# NATURE OF THE CASE

Plaintiff has sued the United States under the Camp Lejeune Justice Act, Pub. L. No. 117-168, § 804, 136 Stat. 1802, 1802–04 (2022).

# STATEMENT OF FACTS

For over three decades, until the late 1980s, the water at the Marine Corps base at Camp Lejeune, North Carolina, was contaminated by a host of toxic chemicals. The government concealed that contamination for years while hundreds of thousands of servicemembers and others were exposed to this water and many developed cancers and other serious diseases. When the government finally disclosed the contamination in the 2000s, numerous victims filed administrative claims for relief with the U.S. Navy.

Those filings were prerequisites to bringing lawsuits against the government for damages under the Federal Tort Claims Act, 28 U.S.C. §§ 2671 *et seq.* Under Section 2675 of the FTCA, "[a]n action shall not be instituted upon a claim . . . unless the claimant shall have first presented the claim to the appropriate

Federal agency" and the claim is "finally denied by the agency," either expressly or constructively after six months of inaction. 28 U.S.C. § 2675(a). The government has published a standard form—SF-95—that individuals must use to file administrative claims. The SF-95 requires only a description of the facts giving rise to the claim and a demand for money.

Many of the filed claims arising out of the toxic water at Camp Lejeune were constructively denied because the Navy did not act on them within six months. As a consequence, numerous individuals who had been seriously harmed by the Camp Lejeune water (as well as beneficiaries of those who had been killed) brought suit in various federal courts against the United States under the FTCA. Those cases were consolidated in multi-district litigation (MDL) in the Northern District of Georgia in 2011 (MDL No. 2218).

In 2016, however, the district court dismissed the claims under the North Carolina statute of repose, as well as certain alternative grounds. *In re Camp Lejeune N.C. Water Contamination Litig.*, 263 F. Supp. 3d 1318 (N.D. Ga. 2016). The Eleventh Circuit affirmed the dismissal exclusively based on the statute of repose in 2019. *In re Camp Lejeune, North Carolina Water Contamination Litig.*, 774 F. App'x 564 (11th Cir. 2019). The Navy then issued a blanket denial of all pending claims. Ex. 1.

On August 10, the President signed into law the CLJA as Section 804 of the Honoring our PACT Act of 2022, Pub. L. No. 117-168, 136 Stat. 1802 (to be codified at 28 U.S.C. § 2671 note). The CLJA establishes a new cause of action for victims of water contamination at Camp Lejeune:

> An individual, including a veteran (as defined in section 101 of title 38, United States Code), who resided, worked, or was otherwise exposed (including in utero exposure) for not less than 30 days during the period beginning on August 1, 1953, and ending on December 31, 1987, to water at Camp Lejeune, North Carolina, that was supplied by, or on behalf of, the United States may bring an action in the United States District Court for the Eastern District of North Carolina to obtain appropriate relief for harm that was caused by exposure to the water at Camp Lejeune.

*Id.* § 804(b). To meet the statute's burden of proof, a plaintiff must "produce evidence showing that the relationship between exposure to the water at Camp Lejeune and the harm is—(A) sufficient to conclude that causal relationship exists; or (B) sufficient to conclude that a causal relationship is at least as likely as not." *Id.* § 804(c)(2)(B).

2

Three features of the CLJA are particularly relevant here.  First, Section 804(h) provides that "[a]n individual may not bring an action under this section before complying with section 2675 of title 28, United States Code," *i.e.*, the exhaustion requirement of the FTCA.  Second, the CLJA applies "only to a claim accruing before the date of the enactment of the [Honoring our PACT] Act," and thus does not create any new claims—only a new statutory cause of action to vindicate preexisting claims.  CLJA § 804(j)(1).  Third, under Section 804(j)(2), claimants must bring suit by the later of 180 days after their claims are denied or two years after the CLJA's enactment.

After the President signed the CLJA, Plaintiff filed a complaint setting forth a single count for relief under the CLJA.  ECF 1.  The complaint explains that Plaintiff was stationed at Camp Lejeune on multiple occasions between 1963 and 1967.  *Id.* ¶¶ 5, 58.  While on base, Plaintiff began to experience severe, debilitating headaches that continue to afflict him to this day.  *Id.* ¶¶ 5, 60  He has subsequently been diagnosed with stage 4 chronic kidney disease and severe chronic interstitial nephritis.  *Id.*

The complaint states that Plaintiff filed his claim with the Navy in September 2011, and that the Navy denied his claim in a letter dated January 25, 2019.  *Id.* ¶¶ 63, 69.  Attached to this opposition are Plaintiff's previously filed administrative claim, along with the denial of that claims.  *See* Exs. 2, 3.

## ARGUMENT

The government argues that individuals who long ago submitted claims to the Navy and saw those claims denied must resubmit precisely the same claims and wait another six months before bringing suit under the CLJA.  MTD 6–12.  That argument is inconsistent with the text, structure, and purpose of the CLJA, precedents construing the FTCA's administrative-exhaustion requirement, and background principles of statutory construction.  This Court should accordingly deny the motion to dismiss.

I.   **The Government's Position Conflicts with the Plain Text of the CLJA**

The government correctly observes that "[i]n interpreting a statute, a court must start with the statutory text."  MTD 6.  But here, the plain text of the CLJA refutes the government's position.  Indeed, the CLJA could not be clearer that a person who has filed an administrative claim under Section 2675 has

3

satisfied the exhaustion requirement, and nothing in the statute remotely supports the government's extra-textual requirement that Plaintiff must exhaust the same claim a second time.

Section 804(h) states that "[a]n individual may not bring an action under this section before complying with section 2675 of title 28, United States Code." Section 2675 in turn provides in relevant part that "[a]n action shall not be instituted upon a claim against the United States for money damages . . . unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied . . . ." In this case, Plaintiff has already "compl[ied] with section 2675." CLJA § 804(h). As the government itself acknowledges, Plaintiff already "filed [a claim] pursuant to the administrative claim presentment requirement of 28 U.S.C. § 2675," MTD 3, using the form that the government has published for that purpose, and this claim was denied. That ends the exhaustion analysis.

The government nevertheless maintains that Plaintiff must *re-exhaust* his claim on the theory that the enactment of the CLJA requires a new round of exhaustion. MTD 6–12. But not a word of the statute supports that view. Congress could easily have provided that any individual who "compl[ied] with section 2675" before the enactment of the CLJA was required to do so again. The statute, however, says nothing of the sort. Instead, it simply provides that no one may sue before "present[ing] [a] claim to the appropriate Federal agency" that is then denied. 28 U.S.C. § 2675(a). Indeed, the statute does not even create a new exhaustion requirement, but merely requires compliance with the preexisting FTCA requirement. For those who already complied with that requirement, the CLJA thus authorizes them to sue immediately.

Importantly, the text of the CLJA makes clear that the statute did not create a new "claim" to be exhausted, but rather created a new way to vindicate a *preexisting* claim in court. That much is clear from Section 804(j), which defines the statute's "[a]pplicability." That provision states that "this section [*i.e.*, the CLJA] shall apply only to a claim accruing before the date of the enactment of this Act."[1] That shows that the relevant "claim[s]" existed *before* the CLJA and are distinct from the *cause of action* created by the

---

[1] The CLJA uses the term "section" to refer to the CLJA as a whole, *i.e.*, Section 804 of the Honoring our PACT Act. CLJA § 804(a).

4

CLJA. It follows textually that if a plaintiff's claim was exhausted before the CLJA was enacted, it need not be exhausted again.

Consistent with that understanding, the CLJA repeatedly distinguishes between a "claim" and an "action." The suit that a plaintiff files in court is called the "action." *See* CLJA § 804(b), (c)(1), (d), (f), and (g). In contrast, a "claim" is something that "accru[ed] before the date of enactment of this Act," CLJA § 804(j)(1), and that can be vindicated in court through the CLJA "action," *see* CLJA § 804(j)(2) (applying statute of limitations to "[a] *claim in an action* under this section") (emphasis added). For that reason, the CLJA, though it created a new cause of action, cannot be read to have created a new "claim" requiring a new round of exhaustion.

That interpretation also follows from the uniform understanding among federal courts about the meaning of "claim" under Section 2675 of the FTCA. Under that body of precedent, a claim filed with an agency under Section 2675(a) is merely a recitation of the relevant *facts* giving rise to an injury and a request for monetary compensation. *Khan v. United States*, 808 F.3d 1169, 1172–73 (7th Cir. 2015). For that reason, a claimant is not required to "identify legal theories" of recovery that would be advanced in court, *Rudisill v. United States*, No. 5:13-CV-110-F, 2014 WL 4352114, at *1 (E.D.N.C. Sept. 2, 2014) (citing *Burchfield v. United States*, 168 F.3d 1252, 1255 (11th Cir. 1999)), and "[a] 'claim' is not synonymous with a 'legal cause of action,'" *Brown v. United States*, 838 F.2d 1157, 1160–61 (11th Cir. 1988) (per curiam); *accord Glade ex rel. Lundskow v. United States*, 692 F.3d 718, 722–723 (7th Cir. 2012) ("[A]n administrative claim need not set forth a legal theory.").

Rather, all that is required is "notice [that] is (1) sufficient to enable the agency to investigate and (2) places a sum certain value on her claim." *Washington v. Dep't of the Navy*, 446 F. Supp. 3d 20, 24–25 (E.D.N.C. 2020) (Boyle, C.J.) (quoting *Ahmed v. United States*, 30 F.3d 514, 516–17 (4th Cir. 1994)); *accord Trentadue ex rel. Aguilar v. United States*, 397 F.3d 840, 853 (10th Cir. 2005) (Section 2675 "require[s] notice of the facts and circumstances underlying a claim rather than the exact grounds upon which plaintiff seeks to hold the government liable"). Indeed, the SF-95 form does not ask for more than

5

Case 7:22-cv-00168-BO-RN   Document 19   Filed 11/30/22   Page 9 of 17

a recitation of the facts and circumstances of the occurrence and resulting harm and a demand for money. *See* 28 C.F.R. § 14.2.[2]

Thus, because a claim does not encompass legal causes of action or legal theories, the fact that Congress has created a new cause of action in the CLJA does not alter the fact that Plaintiffs\ already administratively exhausted his claim years ago by filing a statements of fact and demand for money with the government. The particular cause of action that a plaintiff later invokes in court has no bearing on compliance with the administrative-exhaustion requirement. Rather, so long as a claim specifies "facts plus a demand for money, . . . the claim encompasses *any cause of action fairly implicit in the facts*." *Khan*, 808 F.3d at 1172–73 (emphasis added).

The government's motion to dismiss does not discuss the meaning of the term "claim" in the CLJA or explain how its position is consistent with the body of judicial precedent construing Section 2675. But its textual argument implicitly assumes (incorrectly) that the "claim" must reflect the legal standards of the CLJA. The government begins by noting that "[t]he administrative presentment requirement is written in terms of presenting a particular claim to the agency." MTD 7. That is true, and Plaintiff has complied with that requirement: He presented a particular claim—*i.e.*, a particular set of factual allegations and a demand for compensation—to the Navy years ago. But the government then errs when it asserts that plaintiffs "must first submit [a] *CLJA claim* to the agency." *Id.* (emphasis added). Under the well-settled understanding of the term "claim" in Section 2675(a) discussed above, the government's term "CLJA claim" makes no sense, because a "claim" does not encompass legal theories or legal causes of action. That basic mistake dooms the remainder of the government's textual arguments. In short, the CLJA does not give rise to a new claim, but merely provides a new way to pursue a preexisting claim in court, and it thus does not require a second round of exhaustion.[3]

---

[2] *See* Standard Form 95, https://www.va.gov/OGC/docs/SF-95.pdf.

[3] Ignoring the body of precedential decisions construing Section 2675(a), the government cites an unpublished district court decision for the proposition that if courts recognize a new cause of action after a plaintiff filed an administrative claim, the plaintiff must complete a new round of exhaustion under Section 2675(a) in order to bring suit under the new cause of action. *See* MTD 10 (citing *Wilson v. United States*,

6

For that reason, this case is unlike *McNeil v. United States*, 508 U.S. 106 (1993). ECF No. 24, at 9. In *McNeil*, the plaintiff filed suit under the FTCA before even *filing* his administrative claim, and the Supreme Court held that the district court properly dismissed the FTCA action. 508 U.S. at 107–108, 113. Here, Plaintiff previously filed the exact claim in this action with the Navy, and the Navy denied it years ago. The administrative remedies have therefore been fully exhausted.

The government also claims that if Congress did not intend to impose a re-exhaustion requirement, "it could have easily said so." MTD 7. That argument is deeply flawed. As explained above, Plaintiff has strictly complied with the plain text of the CLJA, because he has filed a claim pursuant to Section 2675(a) that was denied, and he now seeks vindication of the same claim in court. The government appears to believe that Congress needed to say something more to establish that literal compliance with the exhaustion requirement is sufficient for exhaustion. That cannot be right. In reality, Congress's silence cuts exactly the other way: If Congress meant for the enactment of the CLJA to effectively negate all previous filings of administrative claims, it would have said so in clear terms.

In defense of its unorthodox approach to statutory interpretation, the government points to no judicial precedents, much less precedents construing Section 2675(a) or a remotely analogous provision. Instead, the best authority that the government can muster is an obscure provision found in the Patient Protection and Affordable Care Act, a statute enacted over a decade ago. MTD 7–8 (citing Patient Protection and Affordable Care Act, Pub. L. No. 111-148, § 1556(c), 124 Stat. 119, 260 (2010)). That provision specified that its new legal standards governing black-lung benefits would apply to certain pending administrative claims. Pub. L. No. 111-148, § 1556(c), 124 Stat. 119, 260. But even assuming that an unrelated statute from 2010 could somehow shed light on a different Congress's intent in enacting

---

Civ. A. No. 92-2212-JWL, 1992 WL 370618, at *4 (D. Kan. Nov. 25, 1992)). The cited decision, however, cited no authority for that statement, which was arguably dicta, and the decision has been cited only once in the thirty years since it was issued—and then only for the different proposition that a previously filed administrative claim must "contain *evidence* to support elements in [a] new cause of action." *Dukert v. United States*, Civil No. 14-506, 2016 WL 10721258, at *6 (D.N.M. Jan. 5, 2016) (emphasis added). The administrative claim in this case sets out the basic facts necessary to support this CLJA action.

the CLJA in 2022, the government is comparing apples to oranges. The statute in question had amended rules governing a claims-administration process for a certain subset of pending claims, so of course Congress needed to specify which claims were covered. *See* 124 Stat. at 260 ("claims filed . . . after January 1, 2005"). In this case, however, the CLJA does not amend the claims-administration process or target a subset of pending claims. It simply refers to 28 U.S.C. § 2675, which Plaintiff has already satisfied. Indeed, the government's cited statute did not involve a cause of action or an exhaustion requirement, because the administrative claims at issue were subject to direct review in the courts of appeals. 30 U.S.C. § 932(a) (incorporating 33 U.S.C. § 921(c)). It is thus totally inapposite.

It is telling that an irrelevant and obscure statutory provision is the most that the government can find to support its reading of the CLJA. The government struggles to find authority for its position because its position cannot be reconciled with the statute's plain text. That text could not be clearer that a plaintiff is required only to file a single claim under Section 2675(a) with the Navy, and Plaintiff here already did that. Because his claim was denied years ago, he may proceed to court. Any other conclusion would read a limitation into the statute that Congress did not write.

## II. The Statute-of-Limitations Provision of the CLJA Militates Strongly Against the Government's Interpretation

The CLJA's statute-of-limitations provision strongly suggests that Plaintiff is not required to exhaust his claim for a second time. Under that provision, a plaintiff must file suit by the later of six months after the date on which the claim is denied or two years after the enactment of the CLJA. CLJA § 804(j)(2). The evident purpose of the two-year alternative was to ensure that CLJA actions based on claims that were already exhausted years before the enactment of the CLJA—and so could not meet the six-month bar— could be filed. If instead the government were correct that every such plaintiff is required to re-exhaust administrative remedies, Congress's choice to include the alternative two-year limitations period would be puzzling: The only function of the two-year period would be to give a plaintiff whose claims are denied within the first 18 months after the enactment of the CLJA a longer limitations period than the six-month period that applies to all other similarly situated plaintiffs—a seemingly arbitrary distinction.

8

But because the statute does not require plaintiffs who previously exhausted their claims to exhaust their claims a second time, the two-year period has a clear and important function: Without that alternative limitations period, all plaintiffs who previously exhausted their claims would be barred by the six-month statute of limitations from bringing suit. The two-year period thus ensures that all claimants who received final administrative denials years ago may seek relief under the CLJA so long as they file suit within two years of its enactment.

### III. To the Extent That the Statute Is Ambiguous, the Canon in Favor of Members of the Armed Forces Refutes the Government's Interpretation

To the extent that the Court finds the text of the CLJA ambiguous, the canons of statutory construction point decidedly in favor of Plaintiff's position. The Supreme Court has repeatedly applied "the canon that provisions for benefits to members of the Armed Services are to be construed in the beneficiaries' favor." *Henderson v. Shinseki*, 562 U.S. 428, 441 (2011) (internal quotation marks omitted). The CLJA is designed to benefit members of the Armed Services as compensation for the government's deadly mismanagement of Camp Lejeune. It thus must be construed broadly in favor of the injured veterans.

The government has not invoked the canon that ambiguous waivers of sovereign immunity should be construed narrowly and so has forfeited any such argument. But in any event, the Supreme Court has held that the ambiguous-waiver canon "is unhelpful in the FTCA context, where unduly generous interpretations of the exceptions [to the waiver of immunity] run the risk of defeating the central purpose of the statute." *Dolan v. U.S. Postal Serv.*, 546 U.S. 481, 491–492 (2006) (internal quotation marks omitted). It is thus little surprise that the Supreme Court has not invoked the canon when construing Section 2675. See *McNeil*, *supra*. And even if the canon applied here, it would be offset by the canon in favor of members of the Armed Forces.

9

## IV. A Re-Exhaustion Requirement Would Undermine the CLJA's Purpose of Compensating Long-Suffering Victims of the Government's Mismanagement of Camp Lejeune

Imposing a re-exhaustion requirement on Plaintiff would frustrate the basic purposes of Congress in enacting the CLJA. Plaintiff has been subject to interminable delay after interminable delay: first, the government's decades-long delay in testing and de-contaminating the water at Camp Lejeune; then years of delay before the government notified victims about what had happened; then the protracted FTCA litigation that ended without compensation because the government elected to invoke North Carolina's statute of repose; and finally the years of advocacy that it took to persuade Congress to reverse the government's decision legislatively. Moreover, given the statutory period of exposure (1953 to 1987), many plaintiffs are of advanced age, and others are suffering from terminal illnesses. In this unique statutory context, it is unlikely that Congress would have imposed a further six-month delay and required thousands of servicemembers to file a second claim for the same harm.

Nor is re-exhaustion necessary to fulfill the purpose of the exhaustion requirement. As courts have long recognized, and as the government concedes (*see* MTD 9), the purpose of the requirement is to give the government an adequate opportunity to conduct a factual investigation of a claimant's allegations. *See Ahmed*, 30 F.3d at 516–517. Here, Plaintiff's claim was filed over a decade ago, and the government has therefore had more than sufficient time to investigate his allegations. Nothing prevents the government from making a settlement offer now, in light of the findings of its already completed investigation and the new statutory standards.

The government stakes much of its exhaustion argument on a claim about statutory purpose that makes no sense. MTD 8–11. The government argues that it originally denied the claims on the blanket ground that they were barred by the North Carolina statute of repose, the FTCA's discretionary-function exception, and the *Feres* doctrine, without considering their individual merits, and "thus had no need to evaluate whether administrative claims would be meritorious in the absence of those defenses." *Id.* at 8–9. That cannot possibly be correct. The Eleventh Circuit did not issue a definitive ruling on the statute-of-

10

repose issue until 2019, years after many of the claims were filed (and the Eleventh Circuit has never issued a ruling on the other two threshold objections). *See* p. 2, *supra*.

There was accordingly no justifiable basis for the Navy to have declined to investigate those claims in the six months after they were filed, as contemplated by the FTCA, even if the government planned to raise contestable threshold objections to future FTCA actions. After all, if the government had lost in the Eleventh Circuit, it would have been required to litigate the claims on the merits without further delay. And although the government devotes pages of its brief to the grounds on which the Navy denied the claims in *2019* and *2022*, *see* MTD 3-4, 11, that was years after the six-month exhaustion period had expired and so is irrelevant to the question of whether the Navy was adequately incentivized to investigate the claims when they were filed.

The government also states that it had no need to investigate the merits of the claims because "the courts of appeals have consistently upheld the dismissal of complaints based on water contamination at Camp Lejeune on one or more of th[e] threshold grounds." MTD 9. But two of the three decisions cited by the government were issued in 2019 and 2021 and so have no bearing on whether the government should have investigated Plaintiff's claim when it was filed in 2011. The third decision was an out-of-circuit nonprecedential decision that did not address the statute of repose. *See Gros v. United States*, 232 F. App'x 417 (5th Cir. 2007). It could not possibly have justified the government's refusal to investigate properly filed claims.

Accordingly, the Navy can now examine the results of whatever investigations it previously undertook and make settlement offers in light of the new standards of the CLJA. Further delay would only serve to excuse the government's failure to conduct adequate investigations a decade ago at the expense of ailing victims of its misconduct.

The government's other arguments lack merit. The government quotes a 1966 Senate Committee Report discussing the general purpose of the FTCA's exhaustion requirement. MTD 8 (citing S. Rep. No. 1327, 89th Cong., 2d Sess. (1966)). But the report says nothing whatsoever about whether a claimant must re-submit the same administrative claim that was already exhausted if he or she wishes to sue on a new

11

statutory cause of action, and it certainly sheds no light on Congress's intent in enacting the CLJA 56 years later. Moreover, the report makes clear that the purpose of the exhaustion requirement is to give the agency that has "the best information concerning the activity which gave rise to the claim" an adequate "opportunity for investigation," S. Rep. No. 1327 at 3–4 (internal quotation marks omitted)—not to allow the agency to sit on claims for years in the hopes that it will prevail on a procedural defense in court.

The government places great emphasis on the Navy's own recent statements to claimants that they must re-exhaust administrative remedies. MTD 4–5, 10–11. But the government does not claim that the Navy is entitled to any degree of deference in its interpretation of the CLJA. And any such argument would lack merit because there is no evidence that "Congress would expect the [Navy] to be able to speak with the force of law" in interpreting the CLJA, *United States v. Mead Corp.*, 533 U.S. 218, 229 (2001). The Navy's own view of the statute's requirements is therefore irrelevant. The interpretation of the CLJA is solely a question for the courts.

The government also puzzlingly relies on the fact that 170 claimants who previously exhausted their claims have now re-filed those claims. MTD 11. Those filings—which were presumably submitted out of an abundance of caution pending this Court's resolution of the exhaustion issue—have no bearing on the proper interpretation of the CLJA.

More broadly, Congress was undoubtedly aware of the history of Camp Lejeune litigation in enacting the CLJA. Yet Congress did not choose to include any statutory language that requires a second submission of a claim that was already submitted to the Navy. Instead, it merely required compliance with the pre-existing FTCA exhaustion requirement. Especially in light of the canon in favor of members of the Armed Forces, this Court should decline the government's invitation to invent a re-exhaustion requirement found nowhere in the CLJA's text.

## CONCLUSION

This Court should deny the motion to dismiss.

12

Respectfully submitted this 30th day of November, 2022.

/s/ Zina Bash
Zina Bash
KELLER POSTMAN LLC
111 Congress Avenue, Suite 500
Austin, TX 78701
512-620-8375
zina.bash@kellerpostman.com
Texas State Bar No. 24067505
*Lead Counsel for Plaintiff*

Warren Postman
KELLER POSTMAN LLC
1100 Vermont Ave., N.W.
Washington, D.C. 20005
202-918-1870
wdp@kellerpostman.com
District of Columbia Bar No. 995083
*Lead Counsel for Plaintiff*

/s/ W. Michael Dowling
W. Michael Dowling
THE DOWLING FIRM PLLC
Post Office Box 27843
Raleigh, North Carolina 27611
Telephone: (919) 529-3351
Fax: (919) 529-3351
mike@dowlingfirm.com
State Bar No. 42790
*LR 83.1(d) Counsel for Plaintiff* (in association with Keller Postman LLC)

13